1

2

3

4

5

6

7

8

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  HENRIETTA J. SIMENTAL,            Case No. EDCV 14-02406 SS

13              Plaintiff,

14      v.                            MEMORANDUM DECISION AND ORDER

15  CAROLYN W. COLVIN,
    Acting Commissioner of the
16  Social Security Administration,

17              Defendant.

18

19

20

21                    I.

22                INTRODUCTION

23

24      Henrietta  J.  Simental  ("Plaintiff")  seeks  review  of  the

25  final  decision  of  the  Commissioner  of  the  Social  Security

26  Administration  (the  "Commissioner"  or  the  "Agency")  denying  her

27  Disability  Insurance  Benefits.   The  parties  consented,  pursuant

28  to  28  U.S.C.  §  636(c),  to  the  jurisdiction  of  the  undersigned

United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for Title II Disability Insurance Benefits ("DIB") on February 17, 2012. (Administrative Record ("AR") 141-42; see generally Compl. for Rev. ("Compl.") 1-3, ECF No. 1). Plaintiff alleged a disability onset date of February 15, 2012. (AR 141). The Agency denied Plaintiff's application on May 30, 2012 (AR 72-76), and upon reconsideration on December 5, 2012. (AR 78-82). On February 7, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 85-86). Plaintiff, represented by Vijay Patel, testified before ALJ Jesse J. Pease on July 25, 2013 ("hearing"). (AR 31-57).

The ALJ issued an unfavorable decision on July 29, 2013. (AR 18-30). Plaintiff filed a timely request for review with the Appeals Council on August 20, 2013 (AR 15-17), which the Council denied on September 25, 2014 (AR 1-7). Plaintiff filed the instant action on November 20, 2014. (Compl. 1-3).

\\
\\
\\
\\
\\

### III.

### FACTUAL BACKGROUND

Plaintiff was born on November 14, 1962. (AR 58). She was forty-nine years old as of the alleged disability onset date of February 15, 2012. (Id.). She was fifty years old when she appeared before the ALJ. (AR 33-34). Plaintiff completed the twelfth grade in 1980. (AR 163). Prior to her alleged disability onset date, Plaintiff worked as a human resources assistant at a property management firm. (Id.; see AR 48-49). In May of 2013, after her alleged disability onset date, she took a temporary seasonal job providing perfume samples at Macy's department store. (AR 35-37). She alleges that constant discomfort and pain, mostly in her arms, shoulder and hands, keep her from being able to work. (AR 39). She also testified at the hearing before the ALJ that her hypothyroidism is "out of control", her feet and legs ache, and that she suffers from an irregular heartbeat. (AR 40-44).

A.   **Medical History And Doctors' Opinions**

1.   **Dr. Kourosh Kevin Shamlou**

Orthopedic surgeon Kourosh Kevin Shamlou served as Plaintiff's treating physician during the relevant period. (AR 227-50). Dr. Shamlou initially examined Plaintiff on October 24, 2005 for an injury that had occurred on October 4, 2002, while she was working as a Health Service Assistant for the County of

3

San Bernardino.  (AR 172, 227).  In 2006, Plaintiff underwent carpal tunnel release surgery to improve her bilateral carpal tunnel syndrome.  (AR 211).  Dr. Shamlou was the attending physician.  (AR 219).  On March 5, 2007, Dr. Shamlou examined Plaintiff again, noting that although she complained of continued elbow pain and of pain radiating down to her hands, Plaintiff stated that she was happy with her surgical results for her hands and wrists.  (AR 228).  Plaintiff's surgical scars were well-healed, her wrists had symmetrical range of motion with no loss of range of motion and sensation was intact in both hands.  (AR 229).  She also had full range of motion in both her forearms and elbows.  (Id.).  However, Plaintiff's grip strength was diminished and she had a positive Tinel's sign at her elbows.[1] (Id.).  Dr. Shamlou advised against further surgery at that time and noted that her symptoms were tolerable.  (Id.).  Dr. Shamlou opined that Plaintiff had reached the maximum medical improvement, and that she had lost fifty percent of her pre-

---

[1] The National Institute of Neurological Disorders and Stroke explains:

> In the Tinel test, the doctor taps on or presses on the median nerve in the patient's wrist.  The test is positive when tingling in the fingers or a resultant shock-like sensation occurs.  The Phalen, or wrist-flexion, test involves having the patient hold his or her forearms upright by pointing the fingers down and pressing the backs of the hands together.  The presence of carpal tunnel syndrome is suggested if one or more symptoms, such as tingling or increasing numbness, is felt in the fingers within 1 minute.

Carpal Tunnel Syndrome Fact Sheet, NINDS, http://www.ninds.nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel.htm (last visited July 30, 2015).

1 injury capacity to do activities that required lifting, pushing,
2 pulling, squeezing, typing, and repetitive use of her hands and
3 elbows. (AR 229). Dr. Shamlou stated that Plaintiff was unable
4 to return to her usual and customary occupation with the County
5 of San Bernardino. (AR 230).

7     Roughly one year later, on June 9, 2008, Dr. Shamlou
8 completed a physician's report stating that Plaintiff was
9 substantially and permanently incapacitated, and that she would
10 not be able to return to her former job. (AR 248-50).

12    **2.   Dr. Robin Alleyne**

14     On May 14, 2012, state agency consultant Dr. Robin Alleyne,
15 an internist, conducted an Internal Medical Examination of
16 Plaintiff. (AR 211-15). Plaintiff reported last working as a
17 human resources assistant in August 2010 (AR 211), and her
18 physical examination did not reveal anything noteworthy (see
19 generally AR 212-15). Dr. Alleyne did not find any thyroid or
20 cardiac abnormalities (AR 212), nor did Plaintiff have any muscle
21 wasting in her hands (AR 213). Her range of motion in her
22 shoulders, elbows, wrists, hands, hips, knees, and ankles were
23 all within normal limits. (Id.). Plaintiff did complain of
24 numbness and tingling which had improved since her surgery. (AR
25 214). Nevertheless, Plaintiff exhibited normal grip strength and
26 a negative Tinel's sign. (AR 213). Dr. Alleyne also noted that
27 Plaintiff's hypothyroidism was currently stable and that she was
28 on medication for it. (AR 214).

Regarding Plaintiff's functional assessment, Dr. Alleyne determined that Plaintiff was able to lift and carry fifty pounds occasionally and twenty-five pounds frequently; that she was able to push and pull frequently; that she had no walking, standing or sitting restrictions, and that she was able to walk on uneven terrain, climb ladders and work at heights frequently. (AR 214). Dr. Alleyne also opined that Plaintiff did not need any assistive devices; that she was able to climb, balance, kneel, and crawl frequently, and that she was also able to use her hands for fine and gross manipulations on a frequent basis. (Id.).

**B.  Non-Examining Physicians' Opinions Regarding Plaintiff's Physical Condition**

**1.  May 2012 State Agency Physician's Finding**

Non-examining physician R. Weeks reviewed Plaintiff's medical records on May 29, 2012. (AR 58-63). Dr. Weeks took into account Plaintiff's allegations of carpal and cubital tunnel syndrome in both arms as well as her thyroid condition, hysterectomy, and irregular heartbeat. (AR 58, 61). Dr. Weeks noted that Plaintiff had complained of pain and stiffness in her forearms, neck and back, but that Plaintiff was able to do household chores, felt good after exercising by walking one mile, was able to climb up one to two flights of stairs, lift her mattress, shop, drive and do yard work. (AR 61). Dr. Weeks also noted that at times, Plaintiff used a brace. (Id.). Dr. Weeks identified the medications Plaintiff reported taking, her alleged

6

1    physical limitations and her daily activities. (AR 61). Dr.

2    Weeks also summarized Plaintiff's medical records. (Id.). Based

3    on this review, Dr. Weeks found that Plaintiff had an

4    "essentially benign exam without functional limitations" and that

5    "[t]he magnitude of [Plaintiff's] alleged physical limitations

6    [was] significantly diminished by the paucity of objective

7    physical evidence." (Id.). Based on the documented findings,

8    Dr. Weeks found that Plaintiff was not disabled. (Id.).

9

10        2.    December 2012 State Agency Physician's Finding

11

12        On December 4, 2012, Dr. Weeks's decision was affirmed by

13   Dr. G. Spinka. (AR 68). Dr. Spinka reviewed Plaintiff's medical

14   records (see AR 66-68) and noted that there had not been any

15   change in Plaintiff's condition since the last disability report.

16   (AR 68). Dr. Spinka also stated that Plaintiff's thyroid

17   condition was stable with medication and that there was no

18   documentation of cardiac arrhythmia. (Id.). Dr. Spinka found

19   that the prior determination substantively and technically

20   resolved the pertinent adjudicative issues and affirmed Dr.

21   Weeks's May 2012 assessment. (See id.).

22

23   C.   Vocational Expert Testimony

24

25        Vocational Expert ("VE") Joseph Torres testified at

26   Plaintiff's hearing before the ALJ. (AR 47-56). The VE

27   testified that a hypothetical individual with Plaintiff's work

28   experience and exertional limitations could perform Plaintiff's

                                    7

past work as a human resources clerk and eligibility worker. (AR 50). The VE also testified that Plaintiff could work at the exertion levels of both light and medium level work. (AR 50-51). When questioned by Plaintiff's counsel Mr. Patel, the VE further testified that even if Plaintiff was only able to lift, pull and push, and squeeze twenty-five pounds maximum, and could not type over four hours a day, she could still work as a human resources clerk or eligibility worker. (AR 52-55). The VE further clarified that if Plaintiff were only able to use a keyboard no more than fifty percent of the day, she could still work as a human resources clerk or eligibility worker because someone in that position is doing a variety of things throughout the work day, as opposed to a job like that of a data entry clerk. (AR 55).

**D.   <u>Plaintiff's Testimony</u>**

   **1.   Testimony Before The ALJ**

   Plaintiff testified that she was unable to work because of "constant discomfort and pain," stating that the pain radiated from her shoulders down to her hands. (AR 39). She stated that her surgeries had helped and that her feelings of numbness and tingling were not as severe after her surgery. (AR 39-40). Plaintiff also testified that she suffered from hypothyroidism and that her thyroid was "out of control." (AR 40-41). Plaintiff stated that the medication she was currently taking to treat her hypothyroidism was not helping and that she was going

1    to switch to a different medication.  (AR 40-41).  Plaintiff then
2    mentioned that her feet and legs ached after she had been
3    standing for one or two hours.  (AR 41-42).  Finally, Plaintiff
4    testified that she had noticed a "weird cough" and a "bubbling in
5    her chest" and a "gurgly feeling" in her heart.   (AR 43).
6    Plaintiff stated she had not had a chance to go to a doctor about
7    her chest pain.  (Id.).

8

9        When the ALJ asked Plaintiff approximately how much weight
10   she thought she could lift without hurting herself, she said
11   about a gallon of milk in one hand.  (AR 42).  When asked if she
12   thought she could carry one gallon in each hand, she testified
13   that she probably could but that she did not like to and that she
14   had never tried it.  (AR 44-45).

15

16       Plaintiff also testified that she began work in May of 2013
17   at Macy's passing out perfume samples.   (AR 35-36).   She
18   testified that she worked three days a week for three to four
19   hours.  (AR 35).  Plaintiff admitted it was a standing job and
20   she was able to stand for those three or four hours, but she
21   could run to the restroom or sit down for fifteen minutes.  (AR
22   36).

23

24       2.   Statements From Plaintiff's Benefits Application

25

26       In a report accompanying Plaintiff's benefits application,
27   Plaintiff stated that depending on her exertion level on any
28   given day, her forearms had "dull to sharp pain."  (AR 169).

She also attributed her arm pain to housework, yardwork, or driving but admitted that she was able to do all of those activities. (AR 169). Plaintiff stated that she had done similar chores before she became disabled, but that now, it took her longer to finish her chores. (AR 171). Plaintiff indicated that she could climb "1-2 flights" of stairs and walk about a mile. (AR 169-70). Plaintiff does her own grocery shopping, once a week. (AR 170). Plaintiff also reported that she did not need to take rest periods or naps during the day. (AR 171). On occasion, Plaintiff wrote, she used a brace. (Id.).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

\\
\\
\\

To decide if a claimant is disabled and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.

11

Bustamante, 262 F.3d at 953-54.   Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.   Id. at 954.   If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1100; see Reddick, 157 F.3d at 721; see also 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).   The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).   When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.   Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from February 15, 2012, through the date of the ALJ's decision on July 29, 2013. (See AR 21-27).   At step one, the ALJ found that Plaintiff had not

engaged in substantial gainful employment since February 15, 2012. (AR 23). At step two, the ALJ found that Plaintiff had three "severe" impairments: history of bilateral carpal tunnel syndrome with carpal tunnel release; history of cubital tunnel syndrome; and history of hypothyroidism, currently stable on medications. (AR 23). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (AR 23-24). The ALJ then found that Plaintiff had the following RFC:

> Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift and/or carry 20 pounds occasionally and 10 lbs. frequently; stand/walk for 6 hours out of 8; sit for 6 hours out of 8; stand, sit and walk with normal breaks; frequent pushing and pulling; frequent fine and gross manipulation; and no forceful torqueing.

(AR 24).

In making this finding, the ALJ gave great weight to Dr. Alleyne's conclusions. (AR 25-26). He noted that Plaintiff had stopped working in August 2010 and that when she was examined by Dr. Alleyne in May 2012, her physical examination was "mostly unremarkable." (AR 25). The ALJ noted that Dr. Alleyne did not find any thyroid or cardiac abnormalities, or any muscle wasting

13

1   in Plaintiff's hands.  (AR 25-26).  Furthermore, Plaintiff had a

2   negative Tinel's sign and normal grip strength.  (Id.).

3

4       The ALJ also gave great weight to state agency Drs. Weeks'

5   and Spinka's reviews of Plaintiff's records in May and December

6   of 2012.  (See AR 26).  Both doctors found that Plaintiff did not

7   have any severe impairments.  (AR 26, 62, 69).  The ALJ further

8   noted that the doctors were familiar with the rules and

9   regulations that were binding on the ALJ's decision.  (AR 26).

10

11      In contrast, the ALJ assigned minimal weight to Dr.

12  Shamlou's 2007 and 2008 opinions because they were contradicted

13  by Plaintiff's subsequent work activity, the examination

14  findings, Plaintiff's statements, and her lack of treatment.  (AR

15  25).  The ALJ pointed out that in 2007, Dr. Shamlou had opined

16  that Plaintiff was unable to return to work and that she had lost

17  fifty percent of her pre-injury capacity to do activities

18  requiring lifting, pushing, pulling, squeezing, typing, and

19  repetitive use of her hands and elbows.  (See AR 25, 229-30).

20  However, the ALJ noted that during the same evaluation, Plaintiff

21  had stated that she was happy with her surgical results in her

22  hands and wrists.  (See AR 25, 228).  The ALJ also noted that

23  despite Dr. Shamlou's determinations in 2007 and 2008 that

24  Plaintiff was unable to work at her previous occupation,

25  Plaintiff had received very limited treatment after the

26  resolution of her worker's compensation claim, and she had

27  continued to work.  (AR 25).

28

1    Additionally, the ALJ weighed Plaintiff's testimony as to
2  her symptoms, limitations and daily activities, concluding that
3  Plaintiff's testimony was not completely credible. (AR 24-27).
4  The ALJ noted that claimant was able to drive, perform household
5  chores, go grocery shopping on a weekly basis, work in her yard,
6  and that she did not require naps during the day. (AR 25). The
7  ALJ also noted that while Plaintiff testified at her hearing that
8  her thyroid condition was "out of control" and that her
9  medication was not helping, the testimony was inconsistent with
10  her treatment records, which reported several times that she was
11  doing well. (AR 24).

12

13    Furthermore, the ALJ remarked that Plaintiff's testimony
14  about pain in her legs and feet was not supported by her medical
15  records or any clinical findings. (Id.). Plaintiff testified
16  that she was not able to stand on her feet for more than one to
17  two hours before she experienced pain. (AR 42). However, the
18  ALJ remarked that Plaintiff's medical records did not establish
19  any diagnosis related to that allegation and that there were no
20  clinical findings that could explain Plaintiff's alleged pain.
21  (AR 24). Similarly, the ALJ noted that although Plaintiff
22  testified that she sometimes dropped and chipped dishes when she
23  washed them, she had not reported this to her treatment
24  providers. (Id.). The ALJ also pointed out that Plaintiff's
25  examination findings did not establish that she had diminished
26  grip strength. (Id.). The ALJ remarked that he took Plaintiff's
27  claim of pain at face value but found that it was a non-severe
28  impairment because it did not cause her more than mild

1    limitations.   (AR 24-25).   Ultimately, the ALJ found that while

2    Plaintiff's  medically  determinable  impairments  could  reasonably

3    have  been  expected  to  cause  the  alleged  symptoms,  Plaintiff's

4    statements  concerning  the  intensity,  persistence  and  limiting

5    effects  of  these  symptoms  were  not  credible  to  the  extent  that

6    they were inconsistent with the ALJ's RFC assessment.   (AR 25).

7

8         At  step  four,  the  ALJ  determined  that  Plaintiff's  past

9    relevant  work  as  a  human  resources  clerk  and  as  an  eligibility

10   worker  did  not  require  the  performance  of  work-related  activities

11   that  were  precluded  by  the  Plaintiff's  RFC.   (AR  26).

12   Accordingly,  the  ALJ  determined  Plaintiff  was  capable  of

13   performing those jobs.   (Id.).

14

15                                **VI.**

16                        **STANDARD OF REVIEW**

17

18        Under  42  U.S.C.  §  405(g),  a  district  court  may  review  the

19   Commissioner's  decision  to  deny  benefits.   The  court  may  set

20   aside  the  Commissioner's  decision  when  the  ALJ's  findings  are

21   based on legal error or are not supported by substantial evidence

22   in  the  record  as  a  whole.   Aukland v. Massanari, 257 F.3d 1033,

23   1035  (9th  Cir.  2001)  (citing  Tackett,  180  F.3d  at  1097);  Smolen

24   v. Chater,  80  F.3d  1273,  1279  (9th  Cir.  1996)  (citing  Fair v.

25   Bowen,  885  F.2d  597,  601  (9th  Cir.  1989)).

26

27        "Substantial  evidence  is  more  than  a  scintilla,  but  less

28   than a preponderance."   Reddick, 157 F.3d at 720 (citing Jamerson

                                 16

1    v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

2    evidence which a reasonable person might accept as adequate to

3    support a conclusion." Reddick, 157 F.3d at 720 (citing

4    Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To

5    determine whether substantial evidence supports a finding, the

6    court must "'consider the record as a whole, weighing both

7    evidence that supports and evidence that detracts from the

8    [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035

9    (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If

10   the evidence can reasonably support either affirming or reversing

11   that conclusion, the court may not substitute its judgment for

12   that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing

13   Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

14

15                         **VII.**

16                     **DISCUSSION**

17

18      Plaintiff challenges the ALJ's decision on two grounds.

19   First, Plaintiff faults the ALJ's treatment of Dr. Shamlou's

20   opinions, alleging that the ALJ improperly gave minimal weight to

21   Dr. Shamlou's opinions and instead gave greater weight to the

22   opinions of Dr. Alleyne and the state agency doctors. (Pl.'s

23   Mem. in Supp. of Compl. ("Pl.'s Mem.") 4-9, ECF No. 13.)).

24   Second, Plaintiff contends that the ALJ failed to perform a

25   proper credibility analysis of Plaintiff's testimony and wrongly

26   found that Plaintiff's testimony was not credible. (Id. at 9-

27   11).

28

1    The Court disagrees with both contentions.   The record
2    demonstrates that the ALJ gave proper weight to Dr. Shamlou's
3    opinions, and conducted a thorough and proper analysis of
4    Plaintiff's testimony and allegations.   Accordingly, for the
5    reasons discussed below, the Court finds that the ALJ's decision
6    must be AFFIRMED.

7

8    **A.    The ALJ Gave Proper Weight To Dr. Shamlou's Opinions**

9

10   Plaintiff contends that the ALJ did not give proper weight
11   to Dr. Shamlou's opinions and did not address Dr. Shamlou's
12   conclusion, which stated:  "This patient has lost [fifty percent]
13   of her pre[-]injury capacity to do activities requiring lifting,
14   pushing, pulling, squeezing, typing and repetitive use of the
15   bilateral hands and elbows."   (Id. at 4-9; AR 204).   The Court
16   disagrees.   The ALJ properly credited and addressed Dr. Shamlou's
17   opinions.

18

19   Social Security regulations require the ALJ to consider all
20   relevant medical evidence when determining whether a claimant is
21   disabled.   20 C.F.R. §§ 404.1520(b), 404.1527(c), 416.927(c).
22   Where the Agency finds the treating physician's opinion of the
23   nature and severity of the claimant's impairments well-supported
24   by accepted medical techniques and is not inconsistent with the
25   other substantive evidence in the record, that opinion is
26   ordinarily controlling.   20 C.F.R. § 404.1527(c)(2); Orn v.
27   Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

28

Nevertheless, the ALJ is also "responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). An ALJ need not address every piece of evidence in the record, but only evidence that is significant or probative. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2006).

Furthermore, "[t]he treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and whether it is consistent with other evidence in the record. See 20 C.F.R. § 404.1527. "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Andrews, 53 F.3d at 1041 (citing

1  Magallanes, 881 F.2d at 751).   To reject the uncontroverted

2  opinion of plaintiff's physician, the ALJ must present clear and

3  convincing reasons for doing so.   Andrews, 53 F.3d at 1041.

4  Where, as here, the treating physician's opinion is contradicted

5  by other doctors, the Commissioner may reject the opinion by

6  providing "specific and legitimate reasons" for doing so that are

7  supported by substantial evidence in the record.   Rollins v.

8  Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citing Reddick, 157

9  F.3d at 725).

10

11     An ALJ is free to disregard conclusory opinions that lack

12  support in the record.   See, e.g., Batson v. Comm'r of Soc. Sec.,

13  359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating

14  physicians' opinions that are conclusory, brief, and unsupported

15  by the record as a whole, or by objective medical findings);

16  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly

17  rejected doctor's opinion because opinion consisted of conclusory

18  and unexplained check-off reports).

19

20     Here, the ALJ cited several specific and legitimate reasons

21  supported by the record for giving minimal weight to Dr.

22  Shamlou's opinions.   First, the ALJ noted that Dr. Shamlou's

23  opinions were not supported by examination findings and were

24  inconsistent with Plaintiff's subsequent full-time work activity

25  "for 2.5 years after those opinions were reported." (AR 25).

26  The ALJ also pointed out that Dr. Shamlou's report stated that

27  Plaintiff was happy with the results of her surgery and that her

28  physical examination revealed that her wrists had symmetrical

20

1   range of motion with no loss of range of motion.  (Id.).  The ALJ
2   further noted that Dr. Shamlou's report stated that Plaintiff's
3   sensation was intact in her hands and that she had full range of
4   motion in her elbows and forearms.  (AR 25).  The fact that Dr.
5   Shamlou's conclusion conflicted with his own treatment notes
6   provided another valid basis upon which to reject his opinions.
7   See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)
8   (holding that the ALJ properly rejected a treating physician's
9   testimony in favor of an examining physician's statements because
10  the treating physician's "extensive conclusions regarding
11  [claimant's] limitations [were] not supported by his own
12  treatment notes"); see generally 20 C.F.R. § 404.1527(c)(2),
13  (d)(2); see also Tommasetti, 533 F.3d at 1041 (finding that ALJ
14  properly discredited doctor's opinion where doctor's responses to
15  questionnaire were inconsistent with doctor's own medical
16  records).

17

18      Additionally, the ALJ properly gave minimal weight to Dr.
19  Shamlou's opinion because it conflicted with other medical
20  evidence in the record.  The ALJ possesses the sole discretion to
21  resolve conflicts between conflicting medical evidence.  See,
22  e.g., Andrews, 53 F.3d at 1041 ("Where the opinion of the
23  claimant's treating physician is contradicted, and the opinion of
24  a non[-]treating source is based on independent clinical findings
25  that differ from those of the treating physician, the opinion may
26  itself be substantial evidence; it is then solely the province of
27  the ALJ to resolve the conflict.").  An ALJ is not bound by an
28  expert medical opinion on the ultimate question of disability.

1  <u>Tommasetti</u>, 533 F.3d at 1041 (citing <u>Lester v. Chater</u>, 81 F.3d

2  821, 830-31) (9th Cir. 1995)).

3

4      Here, the ALJ observed that Dr. Shamlou's conclusion

5  regarding the purportedly debilitating effects of Plaintiff's

6  carpal and cubital tunnel conditions conflicted with the opinions

7  of examining internist Dr. Alleyne, and non-examining physicians

8  Weeks and Spinka. (<u>See generally</u> AR 25-26). The ALJ also noted

9  that Plaintiff had continued to work and had undergone very

10 limited treatment since her worker's compensation claim resolved.

11 (AR 25).

12

13     Plaintiff also alleges that the ALJ did not properly take

14 into account the term "repetitive" in Dr. Shamlou's conclusion,

15 which stated: "This patient has lost [fifty percent] of her

16 pre[-]injury capacity to do activities requiring lifting,

17 pushing, pulling, squeezing, typing and repetitive use of the

18 bilateral hands and elbows." (Pl.'s Mem. 5-8; <u>see also</u> AR 204).

19 Plaintiff states that her past jobs of human resources clerk and

20 eligibility worker require "frequent-constant manipulative

21 activities" and that Dr. Shamlou's use of the term "repetitive"

22 is a term of art in the worker's compensation arena, a fact that

23 the ALJ did not properly take into account. (Pl.'s Mem. 7-8).

24 However, Plaintiff is improperly conflating the words "frequent"

25 and "repetitive."

26

27     Under Social Security Ruling ("SSR") 83-10, "'[f]requent'

28 means occurring from one-third to two-thirds of the time." SSR

1   83-10, 1983 WL 31251, at *5.  "Occasionally," by contrast, "means

2   occurring from very little up to one-third of the time."  Id.

3   The Agency routinely uses "frequent" and "occasional" to describe

4   different physical movements associated with its categories of

5   "light" and "sedentary" work, but does not employ the term

6   "repetitive" in the same way.  Courts have generally concluded

7   that "frequent" and "repetitive" are not synonymous.[2]

8

9       The Court therefore disagrees with Plaintiff's contention

10  that the ALJ did not properly take into account Dr. Shamlou's

11  conclusion about Plaintiff's capacity to use her bilateral hands

12  and elbows repetitively.  Accordingly, the Court finds that the

13  ALJ gave proper weight to Dr. Shamlou's opinions and arrived at

14  an appropriate RFC.

15  \\

16  \\

17  \\

18  \\

19  _____

20  [2] See, e.g., LeFevers v. Comm'r, 476 F. Appx. 608, 611 (6th Cir. 2012)(stating that in ordinary nomenclature, a prohibition on "repetitive" lifting does not preclude a capacity for "frequent" lifting and that a non-Agency doctor's use of the term "repetitive" was not inconsistent with an RFC for light work); Gallegos v. Barnhart, 99 F. Appx. 222, 224 (10th Cir. 2004) (stating that "frequent" and "repetitive" are not synonymous); see generally Macapagal v. Astrue, No. C07-03706 2008 WL 4449580, at *3 (N.D. Cal. Sept. 29, 2008) (stating that the terms "repetitive" and "occasional" are not identical). Likewise, the Ninth Circuit has noted that "frequent" and "repetitive" are not the same.  See, e.g., Gardner v. Astrue, 257 F. Appx. 28, 30 n.5 (9th Cir. 2007). As such, the Gardner court theorized, "someone who cannot not use his hands constantly in a repetitive manner, but can use his hands frequently in a repetitive manner, could perform the jobs of electronics worker and marker." Gardner, 257 F. Appx. at 30 n.5.

**B.    The ALJ's Finding Regarding Plaintiff's Credibility Is Valid And Is Supported By The Record**

Next, Plaintiff contends the ALJ failed to engage in a proper credibility analysis of Plaintiff's testimony. (Pl.'s Mem. 9-11). The Court disagrees and finds that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony.

As noted above, the ALJ remarked that he took Plaintiff's claim of pain in her legs and feet at "face value" but found that her lower extremity pain was a non-severe impairment because it did not cause her more than mild limitations. (AR 25). The ALJ noted that Plaintiff testified she can stand for 1-2 hours before she has pain. (AR 24). She worked 3-4 hours a day at Macy's and was able to stand during that time. (Id.). Moreover, the ALJ found that while Plaintiff's medically determinable impairments of bilateral carpal tunnel syndrome with carpal tunnel release, cubital tunnel syndrome, and hypothyroidism could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. (AR 25). The Court finds that to the extent that the ALJ declined to credit Plaintiff's subjective statements in their entirety, he offered legally sufficient reasons for doing so.

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step

24

1   analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

2   Initially, the ALJ must determine if there is medical evidence of

3   an impairment that could reasonably produce the symptoms alleged.

4   Id. (citation omitted).  If such evidence exists, and there is no

5   evidence of malingering, the ALJ must provide specific, clear and

6   convincing reasons for rejecting the claimant's testimony about

7   the symptom severity.   Id. (citation omitted).  In so doing, the

8   ALJ may consider the following:

9

10      [One,]  [the]  ordinary  techniques  of  credibility

11      evaluation,  such  as  the  claimant's  reputation  for

12      lying,  prior  inconsistent  statements  concerning  the

13      symptoms,  and  other  testimony  by  the  claimant  that

14      appears  less  than  candid;  [two,]  [the]  unexplained  or

15      inadequately explained failure to seek treatment or to

16      follow  a  prescribed  course  of  treatment;  and  [three,]

17      the claimant's daily activities.

18

19   Smolen, 80 F.3d at 1284 (brackets added); Tommasetti, 533 F.3d at

20   1039.

21

22      Further, the ALJ must make a credibility determination with

23   findings that are "sufficiently specific to permit the court to

24   conclude that the ALJ did not arbitrarily discredit [plaintiff's]

25   testimony."   Tommasetti, 533 F.3d at 1039 (citation omitted).

26   Absent  affirmative  evidence  of  malingering,  an  adverse

27   credibility  finding  must  be  based  on  "clear  and  convincing

28   reasons."   Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d

25

1155, 1160 (9th Cir. 2008).  Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it."  <u>Rollins</u>, 261 F.3d at 857 (citing <u>Fair</u>, 885 F.2d at 604).

The ALJ considered evidence in all of these categories and rendered specific credibility findings that led him to reject Plaintiff's testimony.  The ALJ properly considered evidence indicating that Plaintiff's symptoms were not as severe as alleged, such as her testimony about her thyroid being "out of control," which was inconsistent with her medical records stating her hypothyroidism was well-regulated by medication.  (<u>See</u> AR 24).  Moreover, as the ALJ also observed, Plaintiff's testimony regarding her daily activities weakened her credibility.  (AR 25).  Plaintiff is able to drive, perform household chores, go grocery shopping on a weekly basis and do yardwork, and she does not require naps during the day.  (<u>Id.</u>).  The ALJ also determined that Plaintiff's failure to report her dropping of dishes to her treatment providers also reduced her credibility as did the fact that the record indicated that Plaintiff had not experienced diminished grip strength.  (<u>Id.</u>).  These were convincing reasons supported by the record.

Additionally, while Plaintiff testified that she was able to stand for only one to two hours at a time, she also testified that the seasonal job she held at Macy's in May of 2013 was a standing job where her shift was normally three to four hours.

26

(AR 35-36).   She testified that she was able to stand for those three to four hours and could run to the restroom or sit down for fifteen minutes.   (AR 36).

In sum, there are legally sufficient, record-based reasons for the ALJ to have declined to credit Plaintiff's subjective statements in their entirety.   For these reasons, the ALJ's ultimate determination that Plaintiff's testimony was not credible is valid.

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.   The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 15, 2015                          _____/S/_____

                                                 SUZANNE H. SEGAL
                                                 UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**